**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MARISELDA DE LA PAZ** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:23-cv-00046** |
| | § | |
| | § | |
| **TEXAS A & M UNIVERSITY** | § | **Jury Demanded** |
| **KINGSVILLE** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES MARISELDA DE LA PAZ, hereinafter referred to as "Plaintiff," bringing this cause of action under the Americans with Disabilities Act of 1990 (ADA) as Amended, the Rehabilitation Act and the Age Discrimination in Employment Act against Defendant TEXAS A & M UNIVERSITY-KINGSVILLE.   For cause of action, Plaintiff respectfully shows unto the Court the following:

### I.
### PARTIES

1.     Plaintiff MARISELDA DE LA PAZ (hereinafter Plaintiff De La Paz") is a former employee of the Defendant.

1

2.     Defendant TEXAS A & M UNIVERSITY-KINGSVILLE (hereinafter referred to as "TAMUK" or Defendant TAMUK", is the former employer of Plaintiff and an educational facility located in Kleberg County, Texas and may be served with process by the Clerk of the Court by certified mail, return receipt requested, by serving its President, Dr. Robert H. Vela, Jr., Texas A&M University-Kingsville, 955 University Blvd, Kingsville, TX 78363.  However, a waiver of service has been initially requested.

## II.
## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the claims because Plaintiff has asserted claims arising under federal laws, including the ADA, the Rehabilitation Act, the ADEA and FMLA.

4.     Venue is proper in this District because the cause of action occurred in this District and/or the Defendant is located within the District.

5.     Plaintiff filed her initial charge with the Equal Employment opportunity Commission on January 19, 2021.  Subsequently, she received her determination and notice of right to sue from the EEOC on November 14, 2022.  Therefore, her complaint is timely filed with this court within the 90 days provided by law.

2

## III.
## MISNOMER/MISIDENTIFICATION

6.     In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.

## RESPONDEAT SUPERIOR

7.     Employees involved in this cause of action were, at all times described herein, employees of Defendant and were always acting in the course and scope of that employment.  Accordingly, Defendant is liable for such conduct under the doctrine of *Respondeat Superior*.

## V.
## FACTUAL BACKGROUND

8.     Plaintiff Mariselda De La Paz (age 54) began working for Defendant Texas A & M University - Kingsville in May of 1991 as an accounting clerk with the Fiscal Affairs Department and held multiple positions during her employment. Prior to her wrongful termination, she completed 30 years of employment with TAMUK in the following capacities:

3

9.     Accountant Clerk (Fiscal Affairs) Grant & Contracts Dept. - May 1991 - June 1999

10.     Recruiter/ Admission Counselor (Student Affairs) Special Program/CAMP June 1999 - Sept. 2001

11.     Director, New & Transitioning Students ( Academic Affairs ) College of Engineering Dept. - October 2001 - August 2011

12.     Coordinator, Leadership (Student Affairs) Office of Student Activities / Development - September 2011 - Jan.2021.

13.     She worked continuously under the supervision of Ms. Erin McClure, Director, Student Activities, since September of 2012, when McClure transferred to the position of Coordinator in the Office of Student Activities/Development.   In 2022, McClure transferred to the position of Director of the Office of Student Activities/Development.   Ms. McClure processed Ms. De La Paz' annual performance evaluations from 2012-2020.

14.     In April of 2017, Plaintiff De La Paz was diagnosed with cancer and sought FMLA leave in May 2017.  She returned to work after her FMLA leave in 2017, at which time Ms. McClure began removing Plaintiff's job duties. such as Plaintiff's responsibilities for coordinating the TAMUK Blue & Gold and Kingsville Connection Transportation services for students.

4

Plaintiff took FMLA leave again to undergo surgery for cancer and returned in mid-August of 2018.

15.    On August 13, 2018, after learning that Ms. Loreal E. Robertson, a younger coworker, had been promoted to the position of Assistant Director of Student Activities without granting Plaintiff or others the opportunity to apply for that position, Plaintiff posed questions about why the job had not been posted and other qualified individuals had not been given an equal opportunity to apply for the job. Ms. Kirsten Compary, Assistant Vice President of Student Affairs/ Dean of Students, required Plaintiff to bring her issue first to Ms. McClure, Plaintiff's supervisor. Therefore, Ms. McClure was aware that Plaintiff had complained about her decision to promote Loreal without giving other qualified candidates an opportunity to apply.

16.    Plaintiff's education was equivalent to that of Loreal and Plaintiff's level of relevant knowledge was substantially superior to that of Loreal. By way of comparison, Plaintiff De La Paz earned her Bachelor of Arts (Double Major) in Psychology and Sociology in May 1999 from Texas A&M University-Kingsville, Texas and her Master of Science in Guidance and Counseling from Texas A&M University- Corpus Christi, Texas in May of 2008.

17.    Plaintiff also had considerably more experience than did Loreal in the area of Student Services. Plaintiff held the position of Director for New and Transitioning Students at TAMUK Frank H. Dotterweich College of Engineering department for approximately 10 years and worked as the coordinator for 9 years in the Student Affairs Division. In contrast, Loreal only had 5 years of experience as a professional in the Student Affairs area and received her master's degree in May 2013.

18.    Plaintiff had all the educational credits and credentials to hold the position of Assistant Director position for Student Activities. She also had relevant experience in overseeing student & staff employees involved in event programming, conducting office assessments and programming experience from my current and previous multiple positions at Texas A&M University-Kingsville.

19.    Plaintiff complained about denying her the opportunity to apply for the position of Assistant Director of Student Activities asserting age and disability discrimination by TAMUK as part of a pattern and practice that had been going on for many years.

20.    Although Plaintiff felt that TAMUK's failure to post the position of Assistant Director of Student Activities and open it to qualified applicants,

6

was unfair and illegal, Plaintiff continued to put her best efforts into performing her work responsibilities.

21.     During 2020, Plaintiff and her co-workers did much of their work remotely due to the pandemic. Ms. McClure met with them online as a group, usually on a weekly basis during that period. These were group meetings where Ms. McClure made specific work assignments and checked on progress.

22.     Since Plaintiff's return from FMLA leave, supervisor McClure was openly hostile to Plaintiff. By way of example, during an online group meeting conducted in early April of 2020, she actually said to Plaintiff in an online meeting while her coworkers were listening that she did not believe that Plaintiff was working as she claimed to have been; This was despite the fact that Plaintiff submitted detailed calendar entries on a weekly basis. The calendars where she and her co-workers  recorded their activities were also available online to everyone in the group. Plaintiff went out of her way to document her daily work. Even so, supervisor Erin McClure criticized Plaintiff for her level of activity, while at the same time, tolerating lax or no accountability regarding daily work by Plaintiff's younger coworkers.  The false assertions demonstrate a pattern of retaliation and false accusations.

23.     Ms. McClure's hostility to Plaintiff for taking time off for medical issues was not a one-time event. As early as 2015, supervisor Erin McClure told Plaintiff that requests for medical leave were to be submitted 72 hours in advance. When Plaintiff responded that she could generally tell her about a need for leave for medical appointments 3 months in advance, Ms. McClure responded that she did not have to grant her requests for time off for medical appointments. When Plaintiff asked for her reasoning, Ms. McClure simply announced that she did not have to give a reason in order to deny requested time off for medical treatments and appointments.

24.     Plaintiff was diagnosed with breast cancer on April 13, 2017 and promptly notified her supervisor. Plaintiff was on FMLA leave for her cancer surgery and treatment from late May of 2017 through mid- July of 2017. Upon her return to work, Plaintiff learned that several of her major duties, such as organizing and publicizing the Blue & Gold and Kingsville Transportation System were permanently reassigned to a co-worker.

25.     In late January 2018, the issue of needing medical leave again came up when Plaintiff asked for time off on February 1, 2018, to care for her father while he was hospitalized. Supervisor Erin McClure again told Plaintiff that she could deny her request to take sick leave to deal with a family

8

emergency without an explanation for the denial. Plaintiff responded that this was arbitrary and was against the official TAMUK policy. Because Plaintiff could not reach a satisfactory accommodation with her supervisor, Plaintiff elevated her concerns to Assistant Vice President Kirsten Compary and copied Senior Vice President Terisa Riley. Similarly, Plaintiff was scheduled for an appointment on August 18, 2019 and gave notice to supervisor McClure. Even though she requested this time off *more than a month in advance*, Ms. McClure denied the request to take that day off for a medical appointment. When Plaintiff asked her why she had denied the request for the day off, Ms. McClure responded that she did not have to explain anything and if Plaintiff wanted to, she could go talk to Human Resources about it.

26.     Because this medical appointment was important to her health, and because she had to make her medical appointments far in advance, Plaintiff contacted Ms. Antonia Alvarez (an Assistant Vice President at TAMUK) and asked for her assistance in resolving this issue. Ms. Alvarez met with Plaintiff and supervisor Erin McClure and Alvarez told Ms. McClure that, if necessary, she (Ms. Alvarez) would take Plaintiff's place that day and perform whatever functions were necessary so that Plaintiff could go to her appointment; This made Ms. McClure even more hostile. Ms. McClure

responded to Ms. Alvarez in Plaintiff's presence by stating "***I can not fucking
believe this - no way. I will not let you do that Toni, I will make sure to get
someone to cover for her on that day."*** Plaintiff was shocked by Ms.
McClure's outburst and documented her use of vulgar language and disrespect
in an e- mail to Ms. Alvarez.

27.    During the early part of 2020, Ms. McClure began conducting
individual meetings with each of Plaintiff's co-workers to complete annual
evaluations for their 2019-2020 performance. However, Ms. McClure chose
to delay Plaintiff's evaluation until the very last moment. On May 1, 2020, for
the first time in Plaintiff's almost 3 decades of employment with TAMUK,
she received an overall evaluation of "Partially Meets Expectations" and was
placed on a performance improvement plan without any opportunity to
respond to the evaluation.

28.    As is evident from the 2019 evaluation, the comments sections
contain vague, general criticisms of Plaintiff but lack reference to any specific
events or issues, thereby making it impossible to provide any kind of rebuttal.
Further, as Ms. McClure was well aware, annual management training on
TrainTraq (TAMUK System, Workday Services) comments are ***required*** if
the evaluation rating selected is not "Meets Expectation". Ms. McClure failed

to comment on "Partial Meets Expectations" for "Organizational Leadership" rating. Further, despite, Plaintiff's repeated request for details about the various alleged inadequacies, Ms. McClure never provided any specific examples of any prior reprimand, either oral or written supporting her general criticisms of Plaintiff during the year, nor did she do so during Plaintiff's annual evaluation meeting conducted on May 5, 2020 or afterward.

29.     Despite Plaintiff's request for specifics, Ms. McClure was either unable or unwilling to provide any instance or example where Plaintiff had been reprimanded or disciplined *either verbally or in writing* during the 2019 evaluation period that related to the supposed inadequacies alleged by Ms. McClure in Plaintiff's 2019 annual evaluation.

30.     Further, although Defendant TAMUK asserts that the PIP itself contained information on what was needed to improve upon, the absence of any documentation during 2019-2020 and McClure's failure to utilize the TAMUK's supervisor Performance Management Model--Plan, Coach, Evaluate and Reward (PCER) Training creates a strong indication of more falsities or pretext and evidence that a retaliatory motive influenced the imposition of the Performance Improvement Plan.

31.     Time based goal setting was not done automatically. Specific goal setting was generally done in response to a supervisor's request and no set time specific goals for the 2019-2020 academic year were ever set, eliminating any contention thatit may have been a basis for discipline. The "goals" and required completion dates placed related to the 2019-2020 evaluation were not presented to Plaintiff until May 1, 2020. Those goals were arbitrarily placed there by the supervisor without advance notice and without giving Plaintiff an opportunity to provide input for appropriate time frames and priorities going forward. In fact, one of the major deadlines my supervisor set for Plaintiff for the remainder of 2020 *was scheduled for just 3 days* after she received her evaluation, thereby insuring that she would fail to meet that goal.

32.     Despite any such contention, TAMUK cannot identify any specific task that was started late or not completed on time by Plaintiff.

33.     It is no surprise then, that TAMUK'S investigation found "no evidence" supporting my complaints.

34.     Plaintiff submitted updated medical paperwork submitted to TAMUK HR office on June 16, 2020, where Plaintiff's doctor requested that she be allowed to continue remote work based on her medical condition and

upon then current CDC recommendations and progression of the pandemic at that time.

35.    Although TAMUK asserted that the ADA Request for Accommodation form was not submitted until July 17, 2020, TAMUK was fully aware of Plaintiff's doctor's recommendation and of her compromised immune system due to her cancer treatment. Despite that fact, TAMUK demanded that Plaintiff return to work on campus but was told she could work in her office with the door shut. The doctor's letter in support did not have an expiration date. Instead, the letter noted that Plaintiff's return from remote work should be revisited based on current CDC recommendations and progression of the pandemic. Plaintiff later obtained and submitted a second letter from her doctor dated August 14, 2020 addressing the same need for accommodation.

36.    Plaintiff was improperly required to use her vacation days during the week of September 14, 2020 after her ADA accommodation had supposedly expired. The very fact that her vacation days were reinstated subsequent to her complaint to the Department of Labor makes it clear that the denial of her request for remote work was improper and constituted a refusal to accommodate her medical disability and further retaliation.

37.     The facts demonstrate that Defendant not only discriminated against Plaintiff because of her age and disability and request for accommodation and due to her need to take FMLA leave but also that TAMUK retaliated against Plaintiff by firing her when it learned that Plaintiff stated she would "be filing a discrimination claim with the EEOC" as evidenced in a November 16, 2020 e-mail directed to Henry Burgous, TAMUK Human Resources Director and Antonia Alvarez. That e-mail was copied to multiple individuals including supervisor Erin McClure.

38.     Her next communication from TAMUK was a November 30, 2020 e-mail reinstating the vacation days that she was forced to use to offset TAMUK's refusal to continue her remote work accommodation as recommended by her doctor.

39.     Plaintiff subsequently received an e-mail directing her to meet with supervisor Erin McClure and Antonia Alvarez on December 4, 2020. Plaintiff was notified of my termination from employment during that December 4, 2020, meeting.

**VI.**

**<u>DISABILITY DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED AND FAILURE TO GRANT REQUEST FOR ACCOMMODATION AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS</u>**

40.   The evidence will show that:

    a.   Plaintiff is perceived as disabled under the ADA;

    b.   Plaintiff was qualified for her position;

    c.   Plaintiff suffered discrimination, retaliation and an adverse employment action and demotion and later terminated; and

    d.   The circumstances arising raise an inference of disability discrimination and/or retaliation.

41.   The evidence will also show that Defendant's reason(s) for taking adverse employment actions against Plaintiff's employment were pretextual.

42.   The evidence will further demonstrate that other employees without disabilities and/or that were not regarded or perceived as disabled were treated more favorably than Plaintiff.

43.   After asserting complaints about discrimination, Plaintiff asserts she suffered retaliation and was wrongfully terminated.

## VII.
## DISCRIMINATION AND RETALIATION UNDER THE REHABILITATION ACT

44.   To the extent Defendant receives federal funds, Plaintiff asserts a claim under the Rehabilitation Act for discrimination.

15

45.    Section 504 of the Rehabilitation Act of 1973 prohibits discrimination based on disability in any program or activity operated by recipients of federal funds.  Plaintiff asserts Defendant was and is a receipient of federal funds.

46.    Plaintiff hereby incorporates the preceding paragraphs for all purposes.

47.    Plaintiff is an individual with a disability, under the "regarded as" prong as defined by the REHABILITATION ACT, as amended, see 29 U.S.C. §705(20).

(1) Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to her cancer, leave requests, impairment, impaired immunity and immunity system and requests for accommodation;

(2) Plaintiff was qualified for her position;

(3) Plaintiff suffered an adverse employment action in that she suffered retaliation and a hostile environment and was demoted and terminated; and

(4) The circumstances raise an inference of disability discrimination.

48.    Defendant violated the REHABILITATION ACT 29 U.S.C. §794(a), as amended, by discriminating against Plaintiff because of her disabilities, perceived disability under any program or activity receiving Federal financial

assistance. In doing so, Defendant intentionally and with deliberate indifference to Plaintiff's federally protected rights discriminated against Plaintiff and retaliated against her.

49.     Defendant's discriminatory acts violate 42 U.S.C. §1211 *et. seq.*, as amended, which are incorporated into the REHABILITATION ACT under 29 U.S.C. §794(d).

## VII.
## DISCRIMINATION AND RETALIATION AND VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

50.     The Family and Medical Leave Act (FMLA) entitles eligible employees who work for covered employers to take unpaid, job-protected leave for specified family and medical reasons. Plaintiff asserts she was a covered employee under the FMLA and that Defendant violated the FMLA and retaliated against Plaintiff in violation of the statute.  Defendant further improperly retaliated against Plaintiff for requesting and using eligible FMLA leave and for opposing and complaining of the violations of the statute and the retaliation she suffered.

51.     Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq.*

52.     Defendant was an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

53.     During the time that Plaintiff was employed by Defendant, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

54.     While Plaintiff was employed by Defendant, Plaintiff had an illness that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11).

55.     Plaintiff was entitled to medical leave for her serious health condition or that of a family member protected under the Act as provided for in the FMLA (in 29 U.S.C. § 2612(a)(1)(C)).

56.     As a result of Defendant's violations of the FMLA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

57.     As a result of this willful violation of the FMLA, Plaintiff requests that she be awarded all damages, to which she is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest.  In addition, Plaintiff requests liquidated damages equal to the

amount of reimbursable compensation described above.  Plaintiff also requests any additional equitable relief to which she is entitled.

## VIII.

## DISCRIMINATION AND RETALIATIONUNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT

58.    Plaintiff hereby incorporates the preceding paragraphs for all purposes.

59.    Plaintiff is an individual within the protected class and suffered discrimination based on her age and retaliation based on her opposition to and complaints and reports of discrimination.

## IX.

## ATTORNEY'S FEES

60.    It was necessary for Plaintiff to retain the services of the undersigned attorney to prosecute this action.  Plaintiff is entitled to recover the reasonable and necessary attorney's fees, expert fees and court costs to prosecute this action as authorized under the ADA, FMLA, ADEA and Rehab Act. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

     a.     Preparation and trial of the claim, in an amount the jury deems reasonable;

b.        Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

c.        An appeal to the 5th Circuit Court of Appeals, in an amount the jury deems reasonable;

d.        Making or responding to an Application for Writ of Certiorari to the Supreme Court of the United States, and attorneys' fees in the event that application for Writ of Certiorari is granted, in an amount the jury deems reasonable; and,

e.        Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## X.
## <u>DAMAGES</u>

61.    Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant:

a.  Lost wages in the past and future.

b.  Compensatory damages for mental anguish and inconvenience related to the ADA, ADEA, FMLA and Rehab Act.  In addition, she is entitled to all further damages and liquidated damages under the respective statutes for violations of the Act and willful and/or intentional conduct

c.  All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff;

d.  All reasonable and necessary costs incurred in pursuit of this suit;

20

e.   Expert fees as the Court deems appropriate;

f.   Pre and Post judgment interest as allowed by law;

## XI.
## JURY DEMAND

62.   Plaintiff further demands a trial by jury.

## XII.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein and that upon a final hearing hereof, a judgment be rendered for Plaintiff and against the Defendant, for the actual damages set out above in an amount the jury deems reasonable under the circumstances, along with liquidated damages and/or other recoverable damages to which she may be entitled, costs of court, pre-judgment interest, post-judgment interest, and for such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

/s/ *Adam Poncio*
**Adam Poncio**
**State Bar No. 16109800**
**S.D. Id No. 194847**
**salaw@msn.com**
**Alan Braun**
**State Bar No. 24054488**
**S.D. ID No. 1428056**
**abraun@ponciolaw.com**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Rd., Suite 310**
**San Antonio, Texas  78229**
**Telephone: (210) 212-7979**
**Facsimile:   (210) 212-5880**

**ATTORNEYS FOR PLAINTIFF**

22